NIXON *v.* THE WESTERN UNION TELEGRAPH CO. ET AL.

*Negligence — Dangerous cellar door in sidewalk — Liability of ground-floor tenant — Leases — "Appurtenances" defined — Directed verdict erroneous, when.*

1. In an action for damages for personal injuries caused by negligence in maintaining in a dangerous condition a cellar door in the sidewalk in front of premises leased and occupied by the defendant, where the defense is that the defendant occupied only the ground floor under his written lease and was not an occupant of and had no control over the cellar, it is error for the trial court to direct a verdict for the defendant at the close of the evidence where the evidence shows that the lease was for the ground floor "with all appurtenances" etc.; that the defendant and his sub-tenant were the only ones using the cellar; that defendant had used the cellar for storage purposes for several years; that the only entrance to it was the door complained of, and that defendant frequently went into the cellar through such door.

2. Such evidence tends to show that the defendant had the occupancy and control of the defective premises and that such occupancy and control were within the terms of the lease under the clause "with all appurtenances."

(Decided May 23, 1921.)

ERROR: Court of Appeals for Butler county.

*Messrs. Andrews & Andrews,* for plaintiff in error.

*Mr. Oscar W. Kuhn* and *Messrs. Ireton & Schoenle,* for defendant in error.

HAMILTON, P. J.   The action was one for personal injury, claimed to have been caused by the negligence of The Western Union Telegraph Company in the maintenance of a handle to a cellar door, located on the sidewalk in front of the premises leased by The Western Union Telegraph Company in the city of Middletown.

The handle was in the form of a stirrup, attached to the door, and used to raise it.   The handle in use was pulled up about three inches, and, after use, was constructed to drop through by gravity.   At the time of the accident, the stirrup had failed to drop, and the plaintiff, in walking rapidly along the sidewalk, caught his toe in the stirrup, throwing him to the street, causing the injuries complained of.

The defendant company leased the ground-floor room from certain owners of the premises, by the name of Forster, and used the cellar under the ground-floor room, described in the lease.   The only entrance to this cellar was through the door on the street, as above described.

The defense was that The Western Union Telegraph Company was tenant of the ground-floor room only, by virtue of a written lease, that, while it used a part of the cellar for the storage of boxes and its batteries, and occasionally went into the cellar, it was not the exclusive user and occupant of the cellar and had not the control of the same, and that what use it made of the cellar was only permissive.

At the close of plaintiff's evidence the defendant company moved for an instructed verdict, which the court granted.

The owner of the premises constructed the door and handle prior to the occupancy, if any, of the defendant company, and there is, therefore, no charge of negligent construction against the defendant company, but only the question of maintenance of a dangerous condition.

If there is any evidence that the defendant company occupied and controlled the cellar and the entrance thereto, the case should have been submitted to the jury. *Gibbs* v. *Village of Girard,* 88 Ohio St., 34.

It is contended that under the terms of the lease, taken in connection with the long usage of the property, there is evidence that the cellar and the entrance were under the occupancy and control of the defendant company. The description of the property in the lease is as follows:

"The ground floor front room, 17 x 37 feet in size, situated in building located on the northwest corner of Third & Main Streets, being the same premises as now occupied by the party of the second part, together with sufficient heat to heat said premises during the office hours of the party of the second part, during the months that heat may be needed to the temperature customary in business offices, *with all the appurtenances,"* etc.

J. S. Todd, who was the local manager for the defendant company, was called on behalf of the plaintiff. The record discloses the following questions and answers:

"Q. Could you describe the building or the portion leased by The Western Union Telegraph Company?

"A. The room — lower floor was leased by The Western Union Telegraph Company, at that time. Had been for a number of years.

"Q. Did you sub-let any part of your property?

"A. There was a sub-tenant there, Reider Electric Company, at that time.

"Q. Directing your attention to the cellar under the ground floor room, Mr. Todd, who occupied that?

"A. The Western Union Telegraph Company occupied it. The Reider Electric Company had their supplies down there.

"Q. State whether or not the Reider Electric Company was the sub-tenant you spoke about a moment ago?

"A. Yes, they were sub-tenants.

"Q. To whom did they pay the rent?

"A. To The Western Union Telegraph Company.

"Q. Was there any other renting or contract between you and the Forsters, by which you occupied the cellar that you have described?

"A. Not that I know of. This one lease covered our entire use of whatever premises we occupied or needed.

"Q. What did The Western Union keep in this cellar? What did it use it for, Mr. Todd?

"A. Well, we had kind of a storage and batteries down there.

"Q. What sort of stuff did you store?

"A. Well, there would be boxes in handling our things. Sometimes, they would come in boxes, our supplies, stationery. All empty boxes were kept down there, and clocks that we would ship in, take the clocks out and put the empty boxes down there. Kind of storage.

"Q. How many people connected with The Western Union Telegraph Company used that cellar door? * * *

"A. Well, I had at that time two grown people, and two messenger boys, I believe. Sometimes I had three messenger boys. I am not sure whether I had two or three at that time. They would go down there to fix anything, if necessary."

*Cross-Examination.*

"Q. Did you pay any rent to anyone for the use of that cellar?

"A. Well, as I say * * * as far as we * * * The Western Union was concerned, it seemed to be a part of the premises occupied by the Western Union.

"Q. You had no separate agreement for the use of that cellar?

"A. No separate agreement.

"Q. * * * I asked how often you would use the cellar, say a week?

"A. It might be we would have to use it eight or ten times a week. It might be we wouldn't use it for a couple of weeks at all. It would depend on the way our batteries were working. If they needed cleaning or something, maybe we would have to go down two or three times in one day.

Other times, we might not go down for a week or two weeks. * * *

"Q. The Western Union had been in possession of the property for a number of years prior to the execution of this lease?

"A. They took possession of that place the first of April, 1890.

"Q. And were in possession from that time at least until 1910?

"A. Yes.

"Q. During all that time, they used this cellar for the purpose as you put it?

"A. Yes.

"Q. Then, this lease was made, and you continued to use it in the same way?

"A. Yes. * * *

"Q. The Reider Electric Company was a tenant of The Western Union Telegraph Company?

"A. They sub-let from the Western Union, yes.

"Q. And paid the rent to the Western Union?

"A. To the Western Union.

"Q. And for that, they used a portion of the first floor, and also used the cellar?

"A. Yes.

"Q. And paid the Western Union for that?

"A. We used the cellar in common."

The above evidence, taken from the record, is some evidence tending to show that the defendant company had the occupancy and control of the defective premises. Moreover, it would be evidence tending to show that this occupancy and control are within the terms of the lease under the clause "with all appurtenances." "Appurtenance" is defined by

Webster as any minor thing as belonging or attached to a principal one, as serving some useful purpose, an accessory, or adjunct; subsidiary; annexed; incident. As defined by the supreme court of Ohio in *Meek* v. *Breckenridge,* 29 Ohio St., 642, "An appurtenance is a 'thing belonging to another thing as principal, and which passes as incident to the principal thing.' " Whether under the circumstances the cellar was an appurtenance within the terms of the lease was a question of fact.

Further, see the case of *Adams Express Co.* v. *Beckwith,* 100 Ohio St., 349, as throwing light on the questions herein involved.

Under the evidence above quoted the case should have been submitted to the jury, under proper instructions from the court.

For error in directing the verdict the judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed, and cause remanded.*

CUSHING and BUCHWALTER, JJ., concur.